William Wilson *v.* H. B. Helm et al.

Taxation—Municipal Corporation, Extending Corporate Limits.

　　Wilson's land was separated from the built-up portion of a town by a creek, over which no crossing was erected, and during several months of the year, could not be crossed on foot. Only three families lived on this side of the creek, and no improvements or streets were constructed. Held, not to be liable for city taxation under an act taxing farm lands in the corporate limits.

Same—Municipal Corporation—Ordinance.

　　The ordinance providing for taxing farm lands within the corporate limits of a town extending for a long distance beyond the resident section, is held in violation of the spirit of the constitution, and void.

Same—Tort—Liability of Trustees.

　　The seizure and sale of the property under such an ordinance, would not be malicious, and the owner could not recover more than its actual value, and the trustees of the town would not be liable personally.

APPEAL FROM HARDIN CIRCUIT COURT.

May 9, 1871.

Opinion of the Court by Judge Lindsay:

　　Prior to 1867, the town of Elizabethtown embraced within its corporate limits about two hundred acres of land. By acts of the legislature passed in that year, together with another act approved February 26th, 1868, the territorial limits of the town were so extended as to form a square one and one-half miles in length on either side, and embracing 1,440 acres of land. At that time the population could not have exceeded fifteen hundred persons, and a very large portion of the area inclosed in this extension consisted of farming and horticultural lands, and much of it of land wholly unimproved. By the 19th section of this last act all lands within the corporation used for agricultural and horticultural purposes were exempted from municipal taxation. The appellant, Wilson, who lived on a farm adjoining the old town, violently opposed this extension, and very shortly thereafter became engaged in litigation with the town, because of the fact

of his opposition to the collection of the municipal taxes assessed against his property. It seems that some time in the latter part of the year 1867, he sold his farm, and shortly thereafter purchased 34¾ acres of unimproved land located within the town boundary, but exempt from taxation by the act of February 26th, 1868. He proceeded at once to clear and enclose a portion of the same, and to devote it to both agricultural and horticultural purposes. He also erected upon the tract a handsome and commodious residence. After this, in 1869, this last act, without Wilson's consent, was so amended as to repeal the 19th section and to authorize the taxation of lands used for horticultural and agricultural purposes. The taxes assessed against Wilson's land under the act as amended he refused to pay, and the marshal having levied upon and sold some of his personal property in satisfaction of the same, he brought an action against the marshal and board of trustees to recover the value of said property, claiming that the town charter as amended so far as it authorized his land to be taxed for municipal purposes is in violation of the State Constitution, and therefore void.

This court many years since laid down the doctrine that where vacant land or improved farms occupied by the owners and their families for agricultural purposes and not required either for sheds or houses or other purposes of a town are brought within its taxing power by an act extending its limits, that it is in effect taking the money of the proprietors for the use of the town without just compensation to them (*Cheary v. Hooser, 9th B. Monroe, 346*). And that where the owners of such lands have made no town upon them and desire none, and where there is no legitimate necessity justifying the extension of the boundary so as to include the same, and where the obvious effect is to subject them to taxation for the exclusive benefit of the town, that it constitutes a clear case of taking private property for public use in the form of taxation without making compensation therefor (*City of Covington v. Southgate, 15th B. Monroe, 498*). In every subsequent decision this doctrine has been recognized and approved. From the record before us it seems that Wilson's land is separated from the built-up portion of the town by a creek over which the corporate authorities have erected no crossing, and which, during several months of each year can be crossed by footmen with great difficulty if at all. That there are but three families living within the town

limits east of said creek, Wilson and two negroes; that there is no improved street constructed or in process of construction from Wilson's premises to the business portion of the town; that there are no lots, streets nor alleys on the same side of the creek with him, and none needed in view of the sparsity of the population; that the nearest street lamp to appellant is 650 yards in a direct line, and much farther by any practicable route; that the court house is more than 1,000 yards distant; that the church at which his family worships is much farther than the court house, and that his nearest neighbor is over 200 yards from him. He receives no protection from the police, and, indeed, it seems the municipal officers visit the extensive tract of country lying east of the creek only for the purpose of enforcing the collection of the taxes assessed against the appellant. We are unable to perceive in what manner he is benefited in the slightest degree by reason of his lands being embraced within the boundaries of the town. It is true the value of his land is enhanced by its proximity to a growing town, but so is that of every one else situate in the same vicinity. This is not the character of the compensation for private property taken for public use contemplated by the Constitution. The party whose property is taken should receive some of the advantages resulting from the municipal government. Some portion of the money he is compelled to pay in the way of taxation should be so expended as to benefit him in some degree either directly or incidentally. Tested by these principles we are of the opinion that the act under which the taxes against appellant were assessed, is in conflict with the spirit of the Constitution and therefore void.

We do not, however, agree that the seizure and sale of his property was malicious, nor that he should recover more than its actual value, nor that the board of trustees are personally liable to him for any amount. These conclusions render it unnecessary to discuss the remaining questions involved in this appeal.

We are of opinion that the circuit court erred in dismissing the appellant's petition as to the Marshall Warren, and to that extent the judgment is reversed, and the cause remanded with instructions to render judgment in Wilson's favor against Warren for the damages sustained by him as fixed by the verdict of the jury.

*W. Wilson,* for appellant.
*Wintersmith,* for appellee.